**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**CANDACE NALL,**

            **Plaintiff,**

**-vs-**                                        **Case No. 6:10-cv-464-Orl-28KRS**

**MAL-MOTELS, INC., MOHAMMAD MALIK,**

            **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration after an evidentiary hearing on Defendants' motion to enforce a settlement agreement. Based on the findings of fact and conclusions of law set forth below, I **RESPECTFULLY RECOMMEND** that the motion be **GRANTED**.

**I.    FINDINGS OF FACT.**[1]

    1.    Plaintiff Candace Nall worked for Defendants during two different periods: first, in 2005 and 2006, and again from approximately August 2008 through February 28, 2010. Only the latter period is at issue in this case.

    2.    Plaintiff worked as a front desk clerk and night auditor at a hotel owned by Defendant Mal-Motels, Inc. and operated by Defendant Mohammad Malik (the Hotel). She also performed additional work as necessary, including housekeeping work.

---

[1] A transcript of the evidentiary hearing had not been filed when this Report and Recommendation was prepared. The party objecting to this Report and Recommendation, if any, must cause a transcript to be prepared for review by the presiding District Judge.

3. From August 2008 through approximately December 5, 2008, Nall was paid an hourly rate of $7.00 per hour. During this period, she logged her hours on a time clock.

4. Malik generated time card reports from the time clock records at the end of each two-week pay period. *See* Plaintiff's Ex. 7. The time clock reports for the period October 11, 2008 through October 24, 2008 reflect that Nall worked approximately 24 hours of overtime. *Id.* The time clock reports for the period November 22, 2008 through December 5, 2008 reflect that Nall worked approximately 46 hours of overtime. *Id.*[2] Nall was not paid for this overtime work.[3]

5. After December 5, 2008, Nall became a "salaried" employee who did not use the time clock. Malik paid Nall $8.75 per hour as a salaried employee. Nall reported the hours she worked to Malik verbally or through handwritten notes. Malik called Nall's hours into a payroll company, which issued the paychecks.

6. Guest registration logs admitted into evidence show that Nall worked more than 8 hours on some days. *See* Plaintiff's Ex. 6. Defendants have stipulated that Nall was not paid for 24 hours of overtime worked in the two-week pay period from December 5, 2009 to December 18, 2009 as reflected in the guest registration logs. Doc. No. 53. However, neither party presented a calculation of the number of hours Nall worked in excess of 40 hours for each work week based on the guest registration logs.

7. Nall estimated that she worked 16.75 hours of overtime each pay period from August 2008 through February 2010, including off-the-clock time working as a housekeeper.

---

[2] The parties did not present time clock reports for any other work weeks.

[3] Nall was paid for 1.87 hours of overtime on November 17, 2008. Defendant's Ex. 53 at 1.

Nall's testimony in this regard was not credible. She did not testify what she relied on to reach the specific estimate of the overtime worked. Tellingly, she could not recall other details of events occurring during the period when she has such a specific recollection of the overtime hours she worked.

8. Malik testified that he paid Nall overtime when she reported it. His testimony in this regard is not credible. For example, the time clock reports, which he said he generated, show that Nall worked overtime for which she was not compensated.

9. Nall quit her job with Defendants on February 28, 2010. On that day, she moved out of the room she had been staying in at the Hotel. Thereafter, she did not have a place to stay for several months except for temporary housing paid for from time to time by a church.

10. The present case was filed on behalf of Nall by her counsel on March 29, 2010. Doc. No. 1. She alleged that Defendants violated the overtime compensation provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et. seq. Id.* On April 22, 2012, Malik filed an answer on behalf of himself and Mal-Motels, Inc., which answer was stricken as to the corporate defendant on May 19, 2010. Doc. No. 8. On June 9, 2012, the Clerk of Court entered a default against Mal-Motels, Inc. because it had not filed an answer through counsel. Doc. No. 12.

11. Sometime before May 30, 2010, an employee of Defendants contacted Nall and told her that Malik wanted to talk with her about settling the case. Thereafter, Malik and Nall met to discuss a resolution of the case. Malik asked Nall not to involve her attorney in the negotiations. Malik offered Nall money to settle the case in exchange for a dismissal of the case with prejudice. Malik had a legal assistant prepare a "Voluntary Dismissal with Prejudice," and a

letter from Nall to her attorney indicating that the case has been settled. Plaintiff's Exs. 1, 3. Malik told Nall that he needed to settle because the case would hurt his business.

12.     Nall accepted Malik's offer because she thought it was the right thing to do and because she was homeless and needed the money. She did not consult with her attorneys before accepting the offer. She signed the Voluntary Dismissal with Prejudice and the letter to her attorney indicating that the case had been settled. Malik did not permit her to read the documents, but he explained the terms of the documents to her. Nall understood that by signing the documents she was agreeing to the terms of the documents. Nall received at least $2,000.00[4] from Malik for settlement of the case, which money she has not returned to Defendants. Nall was not an employee of Defendants when she signed the documents and accepted the settlement money. Nall and Malik did not include in their negotiations any amount for attorney's fees and costs.

13.     On June 24, 2010, counsel entered an appearance in the present case on behalf of Defendants. Doc. No. 14. Defendants, through counsel, filed a motion to set aside the default and enforce the settlement agreement allegedly entered into by Defendants and Nall. Doc. No. 13. The Court denied the motion to enforce the settlement agreement without prejudice to refiling after the motion to set aside the default was resolved. Doc. No. 29. The Court set aside the default and permitted Mal-Motels, Inc. to file an answer through counsel. *Id.*

14.     On October 14, 2010, Mal-Motels, Inc., through counsel, filed its answer and affirmative defenses. Doc. No. 31. The Fourth Affirmative Defense alleged that Defendants were

---

[4] Nall recalls that she received $1,000.00 in a check and $1,000.00 in cash. Malik testified that he paid $1,000.00 in a check and $2,000.00 in cash. Whichever amount was paid, Nall agreed to accept it to resolve the case. The Court inquired at the hearing whether Nall wished to return the money in order to proceed with the case. She declined to do so.

-4-

entitled to a set-off against Nall's claim for overtime compensation in the amount of the unpaid rent for the room Nall resided in at the Hotel. *Id.* at 5. At some point after the answer and affirmative defenses were filed, counsel for Defendants learned that a set-off is not a proper affirmative defense in an FLSA case. Thereafter, Defendants filed a complaint against Nall in Florida Circuit Court to recoup money they alleged was owed for unpaid room rent. The state case remains pending.

## II. CONCLUSIONS OF LAW.

1. Although this is an action brought under federal law, "[a] settlement agreement is a contract and, as such, its construction and enforcement are governed by principles of Florida's general contract law." *Schwartz v. Fla. Bd. of Regents*, 807 F.2d 901, 905 (11th Cir. 1987).

2. Florida uses an objective test to determine whether a contract may be enforced. "A contract is formed when the parties express their mutual assent to the essential terms." *Enriquez v. Williams*, No. 2:05-cv-238-FtM-36DNF, 2010 WL 3608463, at * 2 (M.D. Fla. Aug. 20, 2010).

3. "Under Florida law, '[a] party seeking to enforce a settlement agreement bears the burden of showing, by a preponderance of the evidence, that the opposing party assented to the terms of the agreement.'" *Shepard v. Fla. Power Corp.*, No. 8:09-cv-2398-T-27TGW, 2011 WL 1465995, at * 2 (M.D. Fla. April 18, 2011) (internal quotations omitted).

4. To set aside a settlement agreement based upon a claim of duress, the party asserting duress "must prove that '(1) the settlement agreement was executed involuntarily, and thus not as a choice of free will; and, (2) the other contracting party exerted some improper and coercive conduct over the moving party to effectuate the settlement.'" *Id.* at * 3 (quoting *Clark v. School Bd.*, No. 3:09-cv-901-J-34TEM, 2010 WL 4696063, at * 3 (M.D. Fla. Oct. 13, 2010,

*adopted*, 2010 WL 4694840 (M.D. Fla. Nov. 12, 2010); *see also Smith v. Paul Revere Life Ins. Co.*, 998 F. Supp. 1412, 1416 (S.D. Fla. 1997). "Duress results from 'an improper external pressure or influence that practically destroys the free agency of a party and causes him to do an act or make a contract not of his own volition." *Shepard*, 2011 WL 1465995, at * 3.

5. The doctrine of economic duress "permits an aggrieved party to rescind an agreement which was entered into under severe financial anxiety or pressure." *In re Frenz Enters., Inc.*, 89 B.R. 220, 222 (M.D. Fla. 1988). Economic duress merely renders a contract voidable not void per se. *Id.* "A voidable [agreement] may then be ratified and affirmed by a subsequent action of the releasor. The retention of consideration by one *sui juris* with knowledge of the facts will amount to a ratification of a voidable [agreement] executed by him in the settlement of a claim, where the retention is for an unreasonable time under the circumstances of the case." *Id.* (citing 10 Fla. Jur. 2d, *Compromise, Accord and Release*, § 34); *see also Bardwell v. Albertson*, 162 So. 321, 322 (1935).

6. The evidence establishes that Nall and Defendants entered into an agreement to settle the case for payment of money by Defendants in exchange for voluntary dismissal of this case with prejudice by Nall. The evidence establishes that Malik did not assert any external coercive pressure on Nall. While Malik asked Nall not to involve her lawyer in the settlement negotiations, he did not prevent her from talking to her counsel. While Malik did not let Nall read the documents she signed, he explained them to her. Further, the documents are not complex – Nall simply agreed to dismiss her case with prejudice. Malik tendered the agreed amount of money to Nall on the day the documents were signed. As such, the evidence does not establish that Nall executed the "Notice of Voluntary Dismissal" involuntarily or that her free will was

overborne by any actions by Malik. Rather, Nall testified that she agreed to the settlement because she thought it was the right thing to do.

7. Nall has not returned any of the settlement monies to Defendants since the documents were signed in May 2010. Even if Nall entered into the settlement under economic duress due to her financial situation, her acceptance and retention of the settlement monies constitute a ratification of the settlement.

8. Therefore, Defendants and Nall entered into a binding settlement agreement, the essential terms of which were clear. The failure to negotiate a release or to provide for attorney's fees does not undermine the enforceability of the settlement agreement.

9. The final question is whether the settlement reached by Defendants and Nall is a fair and reasonable resolution of a *bona fide* dispute under the FLSA. *See Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350 (11th Cir. 1982). In *Lynn's Food Stores*, the Department of Labor found after an investigation that Lynn's Food Stores had violated provisions of the FLSA. After unsuccessfully attempting to negotiate a settlement with the Department of Labor, Lynn's Food Stores offered fourteen of its employees $1,000.00 to be divided among them as settlement of the matter in exchange for the employees' release of their FLSA claims. *Id.* at 1352. The United States Court of Appeals for the Eleventh Circuit found that this settlement was not binding because it was not approved by the Department of Labor. *Id.* at 1353.

10. The Eleventh Circuit also addressed, albeit in dicta, one other avenue through which settlement of FLSA claims could be binding, specifically settlement of suits brought directly by employees against their employer under the FLSA. The Court wrote: "When employees bring a private action for back wages under the FLSA, and present to the court a

proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.*[5]

11. In the present case, there are *bona fide* disputes about the amount of overtime worked by Nall because much of the overtime claimed is based on Nall's recollection of the amount of overtime she worked "off-the-clock," which testimony was not credible. Further, Nall agreed to compromise her claim because she needed money and, thus, did not wish to bear the time and risk inherent in litigation. The dispute regarding the amount of overtime worked and the reasons for Nall's decision to settle the case provide a reasonable basis to support the compromise of the claim. Accordingly, the settlement entered into between Nall and Defendants was a reasonable resolution of a *bona fide* dispute under the FLSA.

12. Because Defendants paid money to settle the case, counsel for Nall are entitled to reasonable attorney's fees and costs. Accordingly, counsel should be required to negotiate in a good faith effort to resolve the reasonable amount of fees and costs to be paid, failing which counsel for Nall may file a motion for assessment of attorney's fees.

## III. RECOMMENDATION.

For the foregoing reasons, I **recommend** that the Court do the following:

A. **FIND** that the parties have entered into an enforceable settlement agreement;

B. **FIND** that the settlement agreement is a fair and reasonable resolution of a *bona fide* dispute under the FLSA;

---

[5] *Lynn's Food Stores* does not require that the plaintiff-employee be represented by counsel. It stated in this regard only that the employee is likely to be represented by an attorney in the context of a lawsuit brought under the FLSA. 679 F.2d at 1354.

C. **DISMISS** the case with prejudice;

D. **DECLINE** to reserve jurisdiction to enforce the settlement agreement;

D. **PERMIT** counsel for Plaintiff to file a motion for assessment of reasonable attorney's fees and costs, if necessary, following a good faith conference to resolve the amount to be paid; and,

E. **DIRECT** the Clerk of Court to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on March 21, 2012.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy